NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0336n.06
Filed: May 15, 2009

No. 08-1418

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LISA GARNER,       )
      )
    Plaintiff-Appellant,       )
      )  ON APPEAL FROM THE UNITED
v.       )  STATES DISTRICT COURT FOR THE
      )  EASTERN DISTRICT OF MICHIGAN
ROBERT GRANT,       )
      )
    Defendant-Appellee.       )  OPINION
      )
_____ )

**Before: SILER, GILMAN, and KETHLEDGE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** This case arises out of the accidental death of 11-month-old Karlie Garner, who, when left briefly unattended, crawled out of her house through a sliding-glass door left open by her mother and drowned in the backyard swimming pool. Her mother, Lisa Garner, was subsequently prosecuted for involuntary manslaughter and second-degree child abuse. She was acquitted by a jury.

Garner alleges that the investigating officer, Detective Lieutenant Robert Grant, deliberately fabricated two pieces of evidence that led to the issuance of an arrest warrant and the prosecution of charges against her. She brought suit against Detective Grant under 42 U.S.C. § 1983, alleging the violation of her constitutional rights under the Fourth and Fourteenth Amendments. The district

court granted summary judgment in favor of Detective Grant. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The factual background and procedural history of the case are well laid out in the district court's opinion. We will briefly recount only the key facts below.

Lisa Garner was the mother of Karlie Garner (Karlie) and is the wife of Craig Garner (Craig). The Garner family lives in a house with an in-ground pool in the backyard. On the day of the accident, Karlie was playing on the floor of the den. The sliding-glass door that leads from the den into the backyard was left partially open, as was Garner's habit, in order for the family's cat to come and go. After Garner "zoned out" for about ten minutes, she realized that she did not know where Karlie was. She began looking for Karlie, first in the house and then in the backyard. After ten minutes of searching, she found Karlie floating face down in the pool. Attempts by the neighbors and the paramedics to revive Karlie were unsuccessful, and she was pronounced dead on arrival at the hospital.

Detective Grant interviewed Garner at the hospital. Garner gave an account of Karlie's accident similar to what is summarized above. According to Garner, she estimated that she left the sliding door open around three or four inches, but Detective Grant recalled her estimate to be about six inches. Detective Grant also interviewed Craig in the hospital's trauma room. Craig told Detective Grant that he (Craig) had previously admonished Lisa not to leave the sliding-glass door open. According to Detective Grant's contemporaneous notes and his subsequent testimony, Craig

also stated that "I told her all the time not to leave that door open—everyday she leaves the door open like that. I warned her about it—that something like this could happen." According to Craig and Craig's father, who was in the room during the interview, Craig did tell Detective Grant the first parts of the statement, but did not say that he had "warned" his wife that "something like this could happen."

The contested phrase was included in Detective Grant's report, which was forwarded to the Wayne County Prosecutor's Office. After reviewing the report, Assistant Prosecutor Daniel Less recommended that a warrant be issued against Garner for the criminal charges of (1) involuntary manslaughter, and (2) second-degree child abuse. Less later stated in an affidavit that he would have been "highly unlikely" to have recommended a warrant had Craig's statement not included the contested phrase.

After a preliminary hearing, during which Craig testified and disputed his "warning" statement, the state court concluded that the prosecution had presented sufficient evidence to establish probable cause for both charges. Garner was then bound over for trial, which began in April 2007. After her acquittal, Garner brought suit against Detective Grant based on allegations of wrongful arrest, malicious prosecution, and the fabrication of evidence. The district court granted summary judgment in favor of Detective Grant. This appeal followed.

## II. ANALYSIS

We review de novo a district court's grant of summary judgment. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008). Summary judgment is proper where no genuine issue of

material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

"[A plaintiff] must prove a lack of probable cause in order for her to prevail on her Fourth Amendment [wrongful arrest] and state law [malicious prosecution] claims." *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002). The existence of probable cause, therefore, negates an essential element of a § 1983 suit alleging "deprivation of constitutional rights under color of law." *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 357 (6th Cir. 1997) (citation omitted). "[P]robable cause to justify an arrest means facts and circumstances . . . that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (internal quotation marks omitted).

After analyzing the evidence, the district court concluded that, "even absent the contested portion of the . . . statement, probable cause existed as a matter of law to conclude that Plaintiff may have been culpable in the death of the child" under the theories with which she was charged. We agree. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008) (citation and internal quotation marks omitted). Here, the key question boils down

to whether Garner was reckless or grossly negligent under the circumstances.  *See* Mich. Comp.

Laws §750.136b(3)(a) (defining "child abuse in the second degree" as a "reckless act" that "causes

serious physical harm to a child."); Mich. Comp. Laws § 750.321 (setting forth the penalty for

manslaughter without defining its elements).  Although manslaughter is not defined by statute, the

Michigan Supreme Court has explained in *People v. Herron*, 628 N.W.2d 528, 535 (Mich. 2001),

that manslaughter is

> "the killing of another without malice and unintentionally, . . . in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty."  The kind of negligence required for manslaughter is something more than ordinary or simple negligence, however, and is often described as "criminal negligence" or "gross negligence."

*Id.* at 535 (citations omitted).

The undisputed facts are these: Garner was in charge of an eleven-month-old baby; she knew

that the child was mobile and crawling; she "zoned out" for a period of time; and she intentionally

left open the sliding-glass door leading directly to an in-ground swimming pool.  Under these facts,

a prudent person, or a person of ordinary caution, could reasonably believe that Garner was either

reckless or grossly negligent.  Moreover, the undisputed facts leave "only one reasonable

determination possible," *see Parsons*, 533 F.3d at 501, i.e., that probable cause existed for Garner's

prosecution.  Garner's wrongful arrest and malicious prosecution claims are therefore without merit.

This leaves Garner's Fourteenth Amendment due process claim.  Garner alleges that

Detective Grant deprived her of her due process rights by fabricating evidence against her.  She relies

on *Rochin v. California*, 342 U.S. 165, 172-74 (1952), and *Chavez v. Martinez*, 538 U.S. 760, 774

(2003), to assert that Detective Grant's conduct in this case was "so brutal and so offensive to human dignity that [it] 'shock[s] the conscience ,'" thereby violating the Due Process Clause. *See Chavez*, 538 U.S. at 774. This court has held that "a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury.*" Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006).

After reviewing the evidence, the district court concluded that the police conduct alleged by Garner, even if true, did not "shock the conscience." Moreover, because the evidence allegedly fabricated by Detective Grant differed so slightly from Garner's own version, there is no "reasonable likelihood that the false evidence could have affected the judgment of the jury." *See Gregory*, 444 F.3d at 737. This analysis seems sound to us. Indeed, the best evidence that Craig's disputed statement did not affect the judgment of the jury is Garner's acquittal at her criminal trial.

In her brief on appeal, Garner argues that the question of whether Detective Grant's alleged conduct "shocks the conscience," and whether it was likely to have affected the jury at her criminal trial, should have been reserved for the factfinder in her § 1983 action. Summary judgment is proper, however, when the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. Here, the only alleged fabrication of evidence by Detective Grant related to (1) the contested "warning" statement made by Craig, and (2) the two-inch discrepancy in how wide the sliding door was left open. We agree with the district court that these differences are so slight in light of the overall proof as to neither "shock the conscience" nor to have likely affected the judgment of the jury at Garner's criminal trial.

### III. CONCLUSION

For all of the reasons set forth above, and in light of the well-reasoned and thorough opinion

of Judge Robert H. Cleland, we **AFFIRM** the judgment of the district court.