**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0413n.06

No. 09-1844

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 12, 2010**
LEONARD GREEN, Clerk

EUGENE MARTIN MCCUMONS,    )
                          )
    Plaintiff-Appellee,    )
                          )
v.                        )    ON APPEAL FROM THE UNITED
                          )    STATES DISTRICT COURT FOR THE
J. MAROUGI, Officer,      )    EASTERN DISTRICT OF MICHIGAN
                          )
    Defendant-Appellant.    )

Before: BATCHELDER, Chief Judge; SUTTON and KETHLEDGE, Circuit Judges.

SUTTON, Circuit Judge. In this appeal, a police officer challenges the district court's summary-judgment order denying his request for qualified immunity from a false-arrest action filed under § 1983. We affirm.

I.

On August 10, 2007, Officer Marougi went to Hawthorne Park, located in Pontiac, Michigan, to work undercover in response to "numerous and recurring complaints" about "open sexual activity, specifically between males, in the park." R.15-11. While there, he met Eugene McCumons. Taking McCumons' factually supported allegations as true, as we must at this stage of the proceeding, here is what happened next.

While McCumons sat in his parked car, he saw Officer Marougi drive past. The undercover officer nodded at McCumons, and McCumons nodded back, after which the officer parked his car nearby. McCumons drove toward another part of the park, and about ten minutes later the officer drove by McCumons' parked car and made eye contact again. The officer then drove toward the front of the park. When McCumons drove toward the front of the park as well, he noticed the officer's car parked on the side of the road. McCumons stopped and said hello.

The two men exchanged pleasantries, and eventually the officer asked McCumons what would make it a "better day." R.27-2, 122. McCumons asked him what he meant, and the officer replied, "Well, you know what I mean." *Id*. The men continued "flirting" and started to discuss what they were "looking for." *Id*. The officer said that he liked "everything but it," and asked McCumons what he liked. *Id*. He "liked it all too." R.24 ¶ 18. The officer further explained, "I do oral," and McCumons responded, "I don't have anywhere we can go." R.24 ¶¶ 19, 22.

The officer told McCumons that he had to get going, but then suggested that they "go to the back" and gestured over his shoulder. R.24 ¶ 23. McCumons told the officer that he had to "think about it," R.27-2, 123, and after further urging asked, "Why? Are you horny?" R.24 ¶ 27. "Why do you think I'm here?" the officer replied. *Id*. "Okay," McCumons said, before starting to drive his car around the circle on which they were both parked. R.27-2, 123. The officer pulled his car over into the tall grass. McCumons stopped near the car, rolled down the passenger window and told Marougi that he had seen a police officer nearby (little did he know) and was going to leave, which he did.

The officer followed McCumons out of the park to a flea market. At the market, he arrested McCumons, impounded his car and released him from custody after fifteen minutes. McCumons was charged with violating MCL 750.448, which prohibits a person from "invit[ing]" another to engage in "lewd" behavior. The police seized McCumons' car under MCL 600.3801, which permits the seizure of any "vehicle" used for "lewdness." McCumons paid $785 to redeem the car, and a state court eventually dismissed the solicitation charge.

On March 18, 2008, McCumons filed this action against Officer Marougi in federal court, claiming that Marougi violated his rights under the First, Fourth and Fourteenth Amendments of the United States Constitution and state law (gross negligence) as well. Marougi filed a motion for summary judgment on the federal claims, invoking qualified immunity.

Of importance here, the district court determined that the subject of the conversation was "lewd" within the meaning of the statute, but it concluded that McCumons did not "invite" Marougi to do anything and that "it was not objectively reasonable to conclude that Plaintiff violated [MCL 750.448]"—at least at summary judgment. R.33, 10–11. The court thus denied qualified immunity on McCumons' Fourth Amendment claims arising from his arrest and from the seizure of the car. Officer Marougi appeals.

II.

The denial of a motion for summary judgment ordinarily presents "neither a final appealable order nor an appealable interlocutory order." *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010).

But the Supreme Court has long held that denials of motions for qualified immunity amount to final orders under the collateral-order doctrine. *See Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1946 (2009); *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). So long as the qualified-immunity appeal "presents a question of law and does not require us to resolve disputes of material facts," and so long as the defendant is "willing to concede the plaintiff's version of the facts for the purposes of the appeal," we have jurisdiction over the appeal. *Jefferson*, 594 F.3d at 459. Officer Marougi has done just that, *see* Marougi Reply Br. 1, and so we may proceed.

## III.

When a government official invokes qualified immunity in a § 1983 action, the claimant must make two showings to overcome the defense: He must show that the officer's conduct violated a constitutional right, and he must show that the constitutional right in question was "clearly established." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). McCumons plainly satisfies the first requirement: Officer Marougi concedes that, in retrospect, he did not have probable cause to arrest McCumons. At first blush, it might appear that McCumons just as plainly satisfies the second requirement: No one doubts that "it is clearly established that arrest without probable cause violates the Fourth Amendment." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). But it is not that simple. The second question turns not just on whether the legal right is "clearly established" in the abstract but on whether the officer's action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken," was "objective[ly] . . . reasonable[]."

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations omitted). "[R]easonable mistakes,"

the Supreme Court reminds us, "can be made as to the legal constraints" on police officers, and when

that is the case, "the officer is entitled to the immunity defense." *Saucier v. Katz*, 533 U.S. 194, 205

(2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. __, 129 S.Ct. 808 (2009). The

key question, then, is: Did Officer Marougi make a "reasonable mistake" in concluding that he had

probable cause to arrest McCumons?

We think not—at least under the facts alleged and supported by the claimant, McCumons.

The relevant Michigan law says: "A person sixteen years of age or older who accosts, solicits or

invites another person in a public place or in or from a building or vehicle, by word, gesture, or any

other means, to commit prostitution or to do any other lewd or immoral act, is guilty of a crime . . . ."

MCL 750.448. The provision thus permitted Officer Marougi to arrest McCumons if he reasonably

believed that McCumons "invite[d]" him to engage in lewd behavior.

Here is how McCumons described the encounter in his deposition:

I was sitting there and that's when Marougi came around off of the circle and came by me.

When he went by, he nodded and I nodded back. He pulled on ahead a little bit next to some of those cars then, so he was in that bunch of cars. . . . I pulled out and went around the opposite way and back around the circle, went down to the other part of the park . . . . Probably took maybe, I don't know, seven, 10 minutes and Marougi's vehicle came down, around the pond and then crossed in front of me where I was parked, and he looked again.

He went back up toward the front of the park and I did not follow him at that time. . . . It is getting closer to where it's time to go so I moved up and went back up into the hill in the secluded part of the park, I can't tell you directions as to where, but up the hill as I'm going I notice that he parked at the top of the hill. . . .

As he is parked on one side off on the side of the road, I come up and we are a distance apart but I am still on the road. I stopped and that is when I said hello.

R.27-2, 120–21.  The two men then had this conversation:

| | |
|---|---|
| McCumons: | "Hello." |
| Officer: | "Hello." |
| McCumons: | "How are you doing?" |
| Officer: | "Doing alright, how about you?" |
| McCumons: | "I'm fine." |
| Officer: | "Well, what would make it a better day?" |
| McCumons: | "I don't know, what do you mean?" |
| Officer: | "Well, you know what I mean." |
| . . . | |
| Officer: | "Well, what's going on?" |
| McCumons: | "I don't know, what's up?" |
| Officer: | "Well, what are you looking for?" |
| McCumons: | "I don't know." |
| . . . | |
| Officer: | "You know, I like everything." |
| McCumons: | "What do you mean?" |
| Officer: | "I like everything but 'it.'  What do you like?" |
| McCumons: | "It?  What's 'it'?" |
| Officer: | "You know.  What do you like?" |
| McCumons: | "I like everything." |
| . . . | |
| Officer: | "I do oral." |
| McCumons: | "I don't have anywhere we can go." |
| . . . | |
| Officer: | "I got to go to work.  You know how that is." |
| McCumons: | "Yeah, I do." |
| Officer: | "Let's go back to the back." |
| McCumons: | "Where?" |
| Officer: | "Come on, you can get in my truck.  No one will see us." |
| McCumons: | "Let me think about it." |
| Officer: | "Well, I got to get going." |

> McCumons: "Why? Are you horny?"
>
> Officer: "Why do you think I'm here?"
>
> McCumons: "Okay."

R.27-2, 121–23; R.24 ¶¶ 19, 22. Followed by this interaction:

> So I started driving around because I got to come back around to go down the hill. . . . He quickly drives around towards the back also, going from the other way, and he drives off into the high grass. I'm not going to get into the high grass, so I keep going, I stop and I lean over and I roll down my passenger's window and he comes up on an angle and I said I got to get going, I saw a police officer over there. . . .
>
> . . . At that point I said I got to get going and I drove away.

R.27-2, 124.

On this record, if believed, it was Officer Marougi who "invited" McCumons to engage in sexual behavior, not the other way around. It was Marougi who asked McCumons what would make it a "better day." It was Marougi who prompted McCumons by saying that he liked "everything but it." It was Marougi who said "I do oral." And above all, it was Marougi who asked McCumons to "go to the back." How on this version of the facts could one say *McCumons* "invite[d]" Officer Marougi to have sex in the park? It was Officer Marougi who did the soliciting. Perhaps McCumons was amenable to the invitation, but even then he ultimately rejected it. A reasonable officer could not think that McCumons made an invitation when he was the one invited and he was the one who declined.

Officer Marougi insists that, in the context of an invitation for a sexual liaison, we should consider not just the words exchanged but the non-verbal setting in which they were uttered.

- 7 -

Gestures, facial expressions, tone of voice and other contextual clues, he adds, might cast a different light on the conversation. Marougi is right, and indeed the statute refers to invitations made through "word, gesture or any other means." MCL 750.448. But Marougi has only himself to blame for our inability to take him up on this invitation. The summary judgment record does not contain any such facts, and we may not assume their existence to the detriment of the nonmoving party. Had Officer Marougi filed an affidavit to the effect that McCumons' tone, body language, together with other visual and verbal clues, signaled an invitation, and had McCumons not contradicted these observations, that might be a different matter. But we cannot credit factual allegations never made and we cannot draw inferences in favor of the officer and *against* the nonmoving party.

The probable-cause determination was a close call, Officer Marougi adds, and accordingly we must find his assessment to be reasonable. This is the nub of the matter, and it is the nub of our reason for rejecting Marougi's argument. This was not a close call. If McCumons's account is accurate, no reasonable officer could conclude that he had "invite[d]" the officer to have sex in the park—when the officer made the sexual advances and when McCumons was merely receptive to them. The statute covers people who invite others to have sex in the park, not those merely willing to have sex in the park.

IV.

In view of this conclusion, we can make quick work of Officer Marougi's other contentions. He argues that the district court improperly resolved factual disputes against him in ruling for

McCumons. But that is not how we read the opinion. Consistent with its duty at this phase of the litigation, the court gave McCumons the benefit of all inferences in determining whether, as a matter of law, Officer Marougi merely made a "reasonable mistake" in arresting him. Nothing in the district court's opinion (or for that matter ours) prohibits the jury from playing its time-honored role—resolving the competing accounts of what happened at the park—and from then deciding whether Marougi acted reasonably in arresting McCumons.

Officer Marougi separately argues that the district court erred in denying his qualified immunity defense on a different claim—for malicious prosecution—which McCumons included in his amended complaint. But, again, we do not read the district court's order that way. The court's decision responds to a motion filed *before* McCumons amended his complaint. To the extent the court's decision (briefly) mentions malicious prosecution cases, that is because they had some bearing on the extant Fourth Amendment claim, not because the court addressed, much less resolved, the merits of this freestanding (and later-filed) claim.

Officer Marougi also challenges the district court's rejection of his qualified immunity defense with respect to McCumons' freestanding First Amendment claim. Below and in their appellate briefs, the parties (and the district court) appeared to treat this claim as the tail on McCumons' Fourth Amendment claim. If McCumons invited Marougi to have sex in the park, the parties agreed, the First Amendment does not bar enforcement of the statute against McCumons. But if McCumons made no such invitation, he argued, the First Amendment barred the police from enforcing the statute against people who merely talk about having sex. The district court thought

that this last point was wrapped up in the material factual disputes that precluded resolution of the Fourth Amendment claim as a matter of law, and as a result it rejected Marougi's qualified immunity defense to this claim as well.

That may or may not be correct. The parties agree that the statute is constitutional if McCumons made the requisite invitation, leaving McCumons to complain about the validity of the statute only in the context of invitations never made. Neither Marougi nor the Pontiac Police Department, however, has expressed any interest in enforcing the statute in that setting, prompting us to wonder whether we have a live "case or controversy" on our hands. We need not resolve the point today. In view of our ruling on the Fourth Amendment claim, Marougi must face a trial either way (unless the parties settle). To the extent McCumons wishes to continue to pursue his First Amendment claim, it is up to the parties and the district court to reconsider whether, even in light of these fact disputes, this First Amendment claim is a cognizable one and whether it arises in the context of a live dispute.

V.

For these reasons, we affirm the district court's rejection of Officer Marougi's qualified immunity defense to the Fourth Amendment claim.