NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0485n.06

Nos. 10-1228/1299/1576

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FRANKLIN SMITH; DEVIN PLUMMER, | ) | |
| | ) | |
| Plaintiffs-Appellees Cross-Appellants, | ) | |
| | ) | |
| | ) | **FILED** |
| BRANDON PANNELL; CLIFFORD COLLINS, JR., Next friend of CC, a minor; CC, a minor, by Next friend Clifford Collins, Jr., | ) ) ) | ***Jul 14, 2011*** |
| | ) | LEONARD GREEN, Clerk |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| JEFF PATTERSON, | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellant Cross-Appellee, | ) | |
| | ) | |
| JOHN MACDONALD; MICHAEL LIVIDINI; STEVE SCHWEIN; KENNETH MAY; CITY OF TAYLOR, | ) ) ) | |
| | ) | |
| Defendants Cross-Appellees. | ) | |
| | ) | |
| | ) | |

Before: KENNEDY, BOGGS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. In some cases, it is easier to describe what has been lost than what

has been won. Wendy Meinke died on July 30, 2007, in a shooting at the Coppertree Apartment

Complex in Taylor, Michigan. Four teenagers—Franklin Smith, Devin Plummer, Clifford Collins

and Brandon Pannell—were arrested and interrogated, and two of them were charged for what we

now assume, for purposes of this appeal, was innocent conduct. Officer Jeff Patterson, Detective

Steve Schwein and others are now in federal court, defending their actions in the course of what all

would acknowledge was a chaotic murder scene. Because the evidence does not show that the police

"violate[d] clearly established . . . constitutional rights of which a reasonable person would have

known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the defendants are entitled to judgment

as a matter of law on all claims.

I.

At the Coppertree Apartments, Joshua Meinke got in a fight with a gang member named "D-

Ron." When Meinke's mother, Wendy, saw the argument, she intervened. The gang member

disappeared around the corner but soon returned with eight others and opened fire, killing Wendy

Meinke. Joshua Meinke climbed into a Chevy Blazer with two friends who had just arrived and tried

to run over the gang members. Someone wearing a white t-shirt and white basketball shorts fired

at the car, but Meinke and his friends drove away. They flagged down Officer Jeff Patterson and told

him what had happened.

Meanwhile, Smith, Plummer, Collins and Pannell had been playing basketball across town.

After finishing their game, they drove to Coppertree to see friends. They noticed a large crowd and

stopped to see what was going on. When a police officer told the crowd to leave, Smith drove them

away from the scene. They passed Officer Patterson, and one of Joshua Meinke's friends pointed

at Plummer, sitting in the front passenger seat, and said he was involved in the shooting. Plummer

wore a white tank top and white basketball shorts. Officer Patterson stopped the car, arrested all four teenagers and brought them to the Taylor police station.

Detective Steve Schwein and his partner, John MacDonald, ran the investigation at the station. At 5:00 a.m., Schwein gave Plummer *Miranda* warnings and started a custodial interrogation. Within forty minutes, Plummer told Schwein he was present at the fight that led to Wendy Meinke's death. Around 8:00 a.m., Plummer signed a statement to that effect and returned to a holding cell.

Three hours later, Schwein started the interrogation again. He brought Plummer lunch and, shortly before noon, Plummer confessed that someone had handed him a gun and that it had discharged accidentally, killing Meinke. Plummer signed a new statement to that effect.

Schwein submitted a report and warrant request to the Wayne County prosecutor, who charged Plummer with murder and Smith as an accessory for driving the alleged getaway car. Two weeks later, the results from a gunshot residue test came back inconclusive, and the charges were dropped. A Michigan jury later convicted Juan Willis and Michael Johnson for Wendy Meinke's murder.

Smith, Plummer, Collins and Pannell each filed a separate lawsuit against the police and the City of Taylor, alleging various constitutional violations connected with their arrest, interrogation and (in the case of Smith and Plummer) prosecution. Each sought compensatory and punitive damages under § 1983. The district court consolidated the cases and granted the defendants' motion

for summary judgment on all of the plaintiffs' claims, save one: It concluded that Officer Patterson arrested Collins and Pannell without probable cause in violation of the Fourth (and Fourteenth) Amendment. Officer Patterson appeals the denial of qualified immunity, and Plummer and Smith cross-appeal the denial of their claims.

## II.

The federal courts construe § 1983 against the backdrop of common law actions. Although "[t]he common-law . . . never granted police officers an absolute and unqualified immunity," it shielded them from liability "if they acted in good faith and with probable cause." *Pierson v. Ray*, 386 U.S. 547, 555 (1967). Officers thus may not be held liable for money damages under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

The City of Taylor, while suable as a "person" under § 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), does not enjoy the immunities of its officials, *see Owen v. City of Independence*, 445 U.S. 622, 650 (1980). A municipality nevertheless is liable under § 1983 only "when execution of [its] policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694.

## A.

Collins and Pannell claim that Officer Patterson subjected them to an "unreasonable . . . seizure[ ]," U.S. Const. amend. IV, in violation of their Fourth (and Fourteenth) Amendment rights.

It is "clearly established that [an] arrest without probable cause violates the Fourth Amendment," *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), but the qualified immunity inquiry "is not that simple," *McCumons v. Marougi*, 385 F. App'x 504, 506 (6th Cir. 2010). To overcome qualified immunity, it does not suffice to show that the "right is 'clearly established' in the abstract." *Id*. An arresting officer enjoys immunity so long as he "could reasonably (even if erroneously) have believed that the arrest was lawful" at the time based on "the specific context of the case, not as a broad general proposition." *Parsons v. City of Pontiac*, 533 F.3d 492, 500–01 (6th Cir. 2008).

In this instance Officer Patterson at worst made a "reasonable mistake[]" about the existence of probable cause. *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Patterson had just learned that a gang member, joined by eight others, had shot and killed a woman and that another had fired shots at the Chevy Blazer. When an eyewitness identified Plummer as one of the participants, Officer Patterson reasonably stopped the car. He also could reasonably believe that this information was "sufficient to warrant a prudent man in believing that [the four teenagers] had committed or [were] committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The plaintiffs concede that there was "more than one reasonable determination possible" about Plummer's involvement in the shooting and Smith's possible involvement as an accessory. Plaintiffs (Second) Br. at 65. The same goes for Collins and Pannell. Michigan law defines an accessory after the fact broadly as "one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment." *People v. Perry*, 594

N.W.2d 477, 481 (Mich. 1999). Mere minutes separated the shooting and the stop, suggesting that, if Plummer fired shots, Collins and Pannell knew about it, and making it unlikely that they had not just happened to get into the car with him right after the shooting. The "practical, nontechnical" probable cause standard "does not demand" certainty or even that the inference be "more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). It asks only for "reasonable caution," *id.*, and that standard is met here, even without considering the additional level of protection afforded the officer by the principle of qualified immunity. Officer Patterson "reasonably" made this arrest. *See Parsons*, 533 F.3d at 500.

Between *Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008), is a step removed from this case. The police arrested a young man for murder mainly because "he was seen, soon after [the victim's] disappearance, near the wooded area where her body would later be found." *Id.* at 507. We considered it clearly established that "an individual's mere presence at a crime scene does not constitute probable cause for an arrest" and held the arrest unlawful. *Id.* at 515. Extending *Harris* here would ignore the "context of the case." *Parsons*, 533 F.3d at 501. Collins and Pannell were not merely seen at the Coppertree Apartments shortly after the shooting; they were in a car with the suspected shooter, leaving the scene. These circumstances remove the case from the clearly established rule articulated in *Harris* and preserve Officer Patterson's qualified immunity.

B.

Plummer claims that Detective Schwein violated his substantive right to "due process of law," U.S. Const. amend. XIV, § 1, during the custodial interrogation, when he forced him to make a false confession. Such claims often arise under the Fifth Amendment, which ensures that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. But when the government does not try to admit the confession at a criminal trial, the Fifth Amendment plays no role. *See Chavez v. Martinez*, 538 U.S. 760, 772–73 (2003) (plurality opinion); *id.* at 778–79 (Souter, J., concurring). Both parties agree that this leaves Plummer to argue, under the Fourteenth Amendment's guarantee of due process, that Detective Schwein's actions "shock[ ] the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). Our sister circuits have come to the same conclusion in similar settings. *See McConkie v. Nichols*, 446 F.3d 258, 260 (1st Cir. 2006); *Wallace v. City of Chicago*, 440 F.3d 421, 429 (7th Cir. 2006); *Tinker v. Beasley*, 429 F.3d 1324, 1328 (11th Cir. 2005); *Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004).

The question, then, is not whether Plummer's confession would be admissible against him at trial. It is whether Detective Schwein used "interrogation techniques . . . so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). He did not. Construing the evidence in the light most favorable to Plummer, Detective Schwein's actions are not shocking to the degree necessary to violate the right to substantive due process. *Cf. Rochin*, 342 U.S. at 166; *Brown v. Mississippi*, 297 U.S. 278, 281–82 (1936). Schwein, to be sure, used classic interrogation techniques on a 17-year-old boy, one minute claiming to be his friend, the

next minute suggesting he was a hardened criminal, but he had a reason to be persistent.  Not only

had there been an eyewitness identification of Plummer as a participant in the murder, but Plummer

made several statements during the interrogation consistent with involvement in the crime and

eventually consistent with firing the murder weapon.  Detective Schwein of course did not know then

what we know now—that Plummer is apparently innocent—but § 1983 claims do not survive just

because the officer turns out to be wrong.

Plummer claims that Detective Schwein should have respected his initial claims of innocence

and that he confessed only because Schwein overbore his will.  But the reality—in hindsight—that

an officer obtained a false confession does not by itself shock the conscience.  *Wilson v. Lawrence*

*County*, 260 F.3d 946 (8th Cir. 2001), it is true, says that "a person's rights are violated if police

coerce an involuntary confession from him . . . through physical or psychological methods designed

to overbear his will," *id.* at 952.  But that case involved a traditional Fifth Amendment claim, *id.*,

not a Fourteenth Amendment shock-the-conscience claim, and the Eighth Circuit (as we do) applies

a higher standard to claims based solely on substantive due process, *see Sheets*, 389 F.3d at 778.  To

focus on (accurate) declarations of innocence versus (false) admissions of guilt, moreover, is to miss

the reality of an interrogation.  At the beginning, Plummer told Detective Schwein that he did not

arrive at the Coppertree Apartments until after the shooting, but within forty minutes he said he was

there with a large group and that he ran to meet Smith, Collins and Pannell after he heard the shots

fired.  Plummer acknowledges that he gave Detective Schwein "at least five different versions of his

conduct on [that] night."  Plaintiffs' (Second) Br. at 53.  These inconsistencies, even when

accompanied by declarations of innocence, reasonably could suggest he was lying and might eventually tell the truth if Detective Schwein pushed harder. The fact that the charges were eventually dropped against Plummer does not create a constitutional tort.

Because Detective Schwein's actions do not rise to the level of shocking the conscience, the City is not liable on this claim, no matter what policy or custom it may have had. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 404 (6th Cir. 2010). Detectives May, MacDonald and Lividini likewise cannot be held liable for failing to intervene during a constitutional interrogation. *Cf. Durham v. Nu'man*, 97 F.3d 862, 866–68 (6th Cir. 1996).

C.

Plummer and, derivatively, Smith claim that Detective Schwein violated their Fourth (and Fourteenth) Amendment rights by supplying "materially false statements either knowingly or in reckless disregard for the truth to establish probable cause" for their continued detention and prosecution. *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006). Success on this claim requires the claimants to show that no probable cause existed to arrest them and no charges would have been brought against Plummer but for Schwein's deliberate or reckless omissions of material facts from the investigation. *See Garner v. Grant*, 328 F. App'x 325, 327 (6th Cir. 2009).

The evidence does not support this claim. Above all, Plummer signed a written confession to the crime, making it strange to think that Detective Schwein could be responsible for any falsity of statements contained in the confession. Nothing in the record suggests that Detective Schwein

knew Plummer to be innocent and extracted a confession anyway. The evidence at worst "might support an inference of negligence" in view of the many stories Plummer told, but that does not suffice to pin a constitutional tort on Schwein. *Ahlers v. Schebil*, 188 F.3d 365, 373–74 (6th Cir. 1999). That Plummer gave "at least five different versions of his conduct on the night of the Coppertree shootings," as he acknowledges, Plaintiffs' (Second) Br. at 53, proves the point. Presented with a menu of stories, Detective Schwein reasonably could believe that the fifth version was more reliable than the first. Forty minutes into the interrogation, Plummer had abandoned his initial version of events and told Detective Schwein that he was at the Coppertree Apartments during the shooting. This alone gave him ample reason to question Plummer's initial account.

In the revealing light of hindsight, several things have emerged that might have pointed Detective Schwein in the right direction. But these other pieces of evidence mean nothing unless the record permits the conclusions (a) that Detective Schwein omitted them from his report "knowingly or in reckless disregard for the truth," *Gregory*, 444 F.3d at 758, and (b) that they would have destroyed probable cause, *Garner*, 328 F. App'x at 327. Nothing fills that bill. The evidence at most pointed in many directions, but that often will be the case, and the problem was compounded when Detective Schwein heard numerous, inconsistent stories from Plummer and others. The probable-cause standard does not require Detective Schwein to prove Plummer's guilt beyond a reasonable doubt or that he was more likely than not the shooter. *Brown*, 460 U.S. at 742. It requires only that the evidence be "sufficient to warrant a prudent man in believing" that Plummer was the shooter. *Beck*, 379 U.S. at 91. The evidence (at the time) did just that.

On the same day Detective Schwein submitted his report, Plummer points out, other officers took a statement from Darian Wallace, who said he went by "D" or "D-Low." Wallace admitted he was present at the scene and others fingered him as a participant in the crime. Schwein did not include this information in his report. Schwein mentioned Meinke's account of D-Ron's involvement, but he did not include the specific statement by Meinke that D-Ron shot Meinke's mother. While the information implicating Wallace is not completely inconsistent with the theory that Plummer was the shooter, as there is no dispute that the incident involved several people, it is disturbing that the report did not include this statement. However, those omissions do not make Schwein's report false. Apparently Wallace was indeed not involved in the murder, and it can hardly be said that Schwein submitted a false report by omitting a charge that was ultimately false.

Apparently at some point during the same day Detective Schwein filed the report, Joshua Meinke returned to the police station and told police that his friend, Jackie Wiggins, had told him that "Juanjuan," "Black Mike," "Demarco Green" and "Ra-Ra" were involved in the shooting. This information, too, was not inconsistent with Plummer's confession, given the many people in the area, and at any rate it was at best third-hand information. Of course, as things ultimately played out, the vaguest of the three pieces of information—an unconfirmed third-hand account that two others were involved in the shooting, not a confession by Plummer and not numerous accounts that Wallace was the shooter—turned out to be the lead that resulted in a conviction. Yet because qualified immunity requires only reasonableness *at the time of the incidents in question*, and because the officers' reasonable but mistaken judgments meet that standard, the claimants cannot prevail.

- 11 -

III.


For these reasons, the defendants are entitled to summary judgment on all claims. We accordingly reverse the district court's denial of summary judgment to Officer Patterson and affirm in all other respects.